Jonathan D. Miller (CA Bar No. 220848)
jonathan@nshmlaw.com
Jordan T. Porter (CA Bar No. 250112)
jordan@nshmlaw.com
**NYE, STIRLING, HALE,**
**MILLER & SWEET, LLP**
33 West Mission Street, Suite 201
Santa Barbara, CA 93101
Telephone: (805) 963-2345

Benjamin J. Sweet
(PA Bar No. 87338)
(Admitted *Pro Hac Vice*)
ben@nshmlaw.com
**NYE, STIRLING, HALE,**
**MILLER & SWEET, LLP**
1145 Bower Hill Rd, Ste 104
Pittsburgh, PA15243
Telephone: (412) 857-5350

*Attorneys for Lead Plaintiff Janne Kouri and*
*the Settlement Class*

## UNITED STATES DISTRICT COURT
## FOR THE CENTRAL DISTRICT OF CALIFORNIA

JANNE KOURI, individually on behalf
of himself and all others similarly
situated,

        Plaintiff,

    v.

FEDERAL EXPRESS CORPORATION;
and DOES 1-25, inclusive,

        Defendants.

Case No. 2:21−cv−08066−SPG−JEM

**PLAINTIFF'S NOTICE OF**
**MOTION AND UNOPPOSED**
**MOTION FOR FINAL**
**APPROVAL OF CLASS ACTION**
**SETTLEMENT;**
**MEMORANDUM OF POINTS**
**AND AUTHORITIES**

*[Filed concurrently with Declaration*
*of Benjamin J. Sweet; Declaration of*
*John W. Campbell; [Proposed]*
*Order]*

Date:    July 12, 2023
Time:    3:00 PM
Dept:    5C

- 1 -

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

PLEASE TAKE NOTICE that on July 12, 2023, at 3:00 PM in the Courtroom of the Honorable Sherilyn Peace Garnett, United States District Judge for the Central District of California, located at First Street Courthouse, 350 West 1st Street, Courtroom 5C, Los Angeles, California 90012, Plaintiff Janne Kouri ("Plaintiff" or "Mr. Kouri") by and through his undersigned counsel, hereby moves this Court pursuant to Rule 23(e) of the Federal Rules of Civil Procedure ("Rule 23") for an order granting final approval of the proposed Class Action Settlement. This settlement is embodied in the Settlement Agreement between the Plaintiff and Defendant Federal Express Corporation ("FedEx"), which this Court preliminarily approved in its Order dated February 28, 2023 (Dkt No. 63, "Preliminary Approval Order").[1]

This motion is based on this Notice of Motion and Motion, the accompanying Memorandum of Points and Authorities, the Settlement Agreement, the Declaration of Benjamin J. Sweet, the Declaration of John W. Campbell, the argument of counsel, all papers and records on filing in this case, and such other matters as the Court may consider.

Dated: June 15, 2023

NYE, STIRLING, HALE, MILLER & SWEET, LLP

By:   */s/ Benjamin J. Sweet*

Benjamin J. Sweet
Jordan T. Porter
Jonathan D. Miller

*Attorneys for Lead Plaintiff Janne Kouri and the Settlement Class*

---

[1] This Court's February 28, 2023 Order granted preliminary approval of the Settlement Agreement, as amended, attached as Exhibit A to the Stipulation to Submit Second Amended Settlement Agreement.  *See* Dkt No. 60-1.

# **TABLE OF CONTENTS**

I.   RELEVANT FACTUAL AND PROCEDURAL BACKGROUND..............7

    A.   Factual Background .........................................................................7

    B.   Litigation and Settlement History ........................................................8

II.   THE TERMS OF THE SETTLEMENT ......................................................10

III.   ARGUMENT ...............................................................................12

    A.   The Proposed Settlement Exceeds the Standards for Judicial Approval and Provides Excellent Relief to Plaintiff and the Settlement Class ................................................................12

       1. The Settlement Class Received Excellent Representation .............15

       2. The Settlement is the Product of an Arms' Length Negotiation ....16

       3. The Settlement Provides Complete Relief to the Class .................17

         i. The costs, risks, and delay of trial and appeal ...........................17

         ii. The effectiveness of distributing relief to the class ...................19

         iii. The terms of the proposed award of attorneys' fees.................19

         iv. All required agreements have been disclosed. ..........................22

       4. The Settlement Treats Settlement Class Members Equitably ........22

    B.   Adequate Notice of The Parties' Proposed Settlement Has Been Provided to The Settlement Class, And There Have Been No Objections ......................................................................23

    C.   Courts Throughout the Federal Judiciary Have Approved Analogous Settlements of Class Actions Asserting ADA Violations ........................................................................25

V.   CONCLUSION ............................................................................26

PLAINTIFF'S NOTICE OF MOTION AND UNOPPOSED MOTION FOR
REASONABLE ATTORNEYS' FEES AND COSTS

## **TABLE OF AUTHORITIES**

*Betorina v. Randstad US, L.P.*
  2017 WL 1278758, *4 (N.D. Cal. 2017).........................................................15

*Atzin v. Anthem, Inc.*
  2022 WL 4238053, at *5 (C.D. Cal. Sept. 14, 2022)....................................21

*Briseño v. Henderson*
  998 F.3d 1014, 1023 (9th Cir. 2021)........................................................19, 21

*Californians for Disability Rights, Inc. v. California Dep't of Transp.*
  249 F.R.D. 334, 349 (N.D. Cal. 2008). .......................................................15

*Campbell v. Facebook, Inc.*
  951 F.3d 1106, 1126 (9th Cir. 2020)......................................................20, 21

*Cmty. Res. for Indep. Living v. Mobility Works of Calif., LLC*
  533 F. Supp. 3d 881, 885 (N.D. Cal. 2020) .......................................13, 14, 19

*Doe v. United Healthcare Ins. Co.*
  2014 WL 12586448, at *2 (C.D. Cal. Oct. 15, 2014) .................................21

*Chun-Hoon v. McKee Foods Corp.*
  716 F. Supp. 2d 848, 852 (N.D. Cal. 2010) .................................................25

*Hanlon v. Chrysler Corp.*
  150 F.3d 1011, 1019–22 (9th Cir. 1998).  ................................12, 14, 16, 17

*Harris v. Vector Mktg. Corp.*
  2011 WL 1627973, at *9 (N.D. Cal. Apr. 29, 2011) ...................................23

*Hilsley v. Ocean Spray Cranberries, Inc.*
  2020 WL 520616, at *5 (S.D. Cal. Jan. 31, 2020) .....................................15

*In re Anthem, Inc. Data Breach Litig.*
  327 F.R.D. 299, 318 (N.D. Cal. 2018) .........................................................18

*In re MyFord Touch Consumer Litig.*
  2019 WL 1411510, at *8 (N.D. Cal. Mar. 28, 2019 .....................................15

PLAINTIFF'S NOTICE OF MOTION AND UNOPPOSED MOTION FOR FINAL
APPROVAL OF CLASS ACTION SETTLEMENT

*In re Syncor ERISA Litig.*

    516 F.3d 1095, 1101 (9th Cir. 2008)...............................................................13

*In re Tableware Antitrust Litig.*

    484 F. Supp. 2d 1078, 1079–80 (N.D. Cal. 2007) ........................................16

*In re Quaker Oats Labeling Litig.*

    2014 WL 12616763, at *1 (N.D. Cal. July 29, 2014) ...................................21

*Lane v. Facebook, Inc.*

    696 F.3d 811, 819 (9th Cir. 2012)...................................................................14

*McNamara v. Infusion Software, Inc.*

    2020 WL 4921984, at *1 (D. Ariz. Aug. 21, 2020) ......................................20

*Nevarez v. Forty Niners Football Co., LLC*

    474 F. Supp. 3d 1041, 1046 (N.D. Cal.) ..................................................19, 25

*Rodriguez v. West Publ'g Corp.*

    563 F.3d 948, 965 (9th Cir. 2009)........................................................16, 18, 24

*Satchell v. Fed. Exp. Corp.*

    2007 WL 1114010, at *4 (N.D. Cal. Apr. 13, 2007) ....................................17

*Silber v. Mabon*

    18 F.3d 1449, 1454 (9th Cir. 1994).................................................................24

*Smith v. Keurig Green Mountain, Inc.*

    2023 WL 2250264, at *4 (N.D. Cal. Feb. 27, 2023)......................................12

*Staton v. Boeing Co.*

    327 F.3d 938, 953 (9th Cir. 2003)...................................................................13

*Swain v. Anders Group, LLC*

    2023 WL 2976368, at *2 (E.D. Cal. Apr. 17, 2023) ...............................12, 14

*Vallabhapurapu v. Burger King Corp.*

    2012 WL 5349389 (N.D. Cal. Oct. 29, 2012)................................................26

PLAINTIFF'S NOTICE OF MOTION AND UNOPPOSED MOTION FOR FINAL
APPROVAL OF CLASS ACTION SETTLEMENT

<u>Statutes & Regulations</u>

28 C.F.R. §§ 36.101 ...............................................................................7,8

42 U.S.C. §§ 12181-12189 ........................................................................8

Fed. R. Civ. P. 23(e)(1)-(5)......................................................................12

- 6 -

PLAINTIFF'S NOTICE OF MOTION AND UNOPPOSED MOTION FOR FINAL
APPROVAL OF CLASS ACTION SETTLEMENT

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.   RELEVANT FACTUAL AND PROCEDURAL BACKGROUND

### A. Factual Background

This is a putative nationwide civil rights class action lawsuit brought by Janne Kouri, a California resident and business owner living with a mobility disability against Defendant FedEx.  A gifted college football player at Georgetown University, Plaintiff Kouri suffered a spinal cord injury in 2006 that left him paralyzed.  He now uses a wheelchair for mobility.  Following his injury, Mr. Kouri founded a nonprofit rehabilitation center, aimed at helping others with paralysis, called NextStep Fitness, and now serves as the organization's President.  Mr. Kouri has a FedEx business account and uses a FedEx Drop Box near his business to ship overnight packages.

FedEx maintains a system of more than 34,000 unstaffed Drop Boxes to provide customers the opportunity to drop off packages in office buildings, shopping centers and corporate and industrial parks.  Plaintiff's claims arise from his own experience with accessibility barriers present at Defendant's Drop Boxes in the form of excessive reach ranges and excessive maximum forces required to operate the Drop Box doors when attempting to ship packages, and from site investigations at 102 of Defendant's Drop Box facilities across seven states, which *all* presented accessibility barriers, including specifically excessive reach ranges and excessive maximum forces required to operate the Drop Boxes of the type encountered by Plaintiff Kouri. Plaintiff Kouri asserts that the excessive reach range and maximum force conditions required to operate the Drop Box doors persist in part as a result of Defendant's existing but inadequate internal maintenance and repair procedures, which fail to ensure compliance with reach range and operable parts requirements of the ADA's implementing regulations.  *See* 28 C.F.R. §§ 36.101 *et seq.*

PLAINTIFF'S NOTICE OF MOTION AND UNOPPOSED MOTION FOR FINAL
APPROVAL OF CLASS ACTION SETTLEMENT

## B. Litigation and Settlement History

On October 9, 2021, Mr. Kouri filed a class action complaint in the United States District Court for the Central District of California in which he alleged that Defendant FedEx violated Title III of the Americans With Disabilities Act, 42 U.S.C. §§ 12181 to 12189 (the "ADA"), its implementing regulations, and California's Unruh Civil Rights Act (the "Lawsuit").  Mr. Kouri filed a First Amended Complaint (Dkt. No. 23) on November 18, 2021, which FedEx answered on November 29, 2021 (Dkt. No. 24).  Mr. Kouri asserted in the First Amended Complaint that he encountered accessibility barriers in the form of excessive reach ranges and excessive maximum forces required to operate the Drop Box door when attempting to ship packages via Defendant FedEx's unstaffed, publicly accessible Drop Boxes. Specifically, Mr. Kouri asserted that the excessive reach range and maximum force conditions required to operate the Drop Box doors persist in part as a result of Defendant's existing but inadequate internal maintenance and repair procedures, which fail to ensure compliance with reach range and operable parts requirements of the ADA's implementing regulations.  *See* 28 C.F.R. §§ 36.101 *et seq*.  Mr. Kouri sought injunctive relief, declaratory relief, and minimum statutory damages as well as attorneys' fees and litigation costs.  *See* Dkt. No. 23.

Over the course of approximately eight months, the parties engaged in extensive settlement negotiations in an effort to resolve this matter.  On March 10, 2022, the parties participated in a Zoom mediation with Hon. Leo Pappas, Ret. Although the mediation did not immediately result in a resolution of this action, the parties continued their settlement negotiations in the months that followed.  On August 23, 2022, the parties entered into a Memorandum of Understanding which set forth the material terms of the informal settlement.  Later, on September 2, 2022, the parties executed a settlement agreement and filed a Notice of Settlement with the Court on September 13, 2022.  Dkt No. 48.  The Settlement Agreement was later

PLAINTIFF'S NOTICE OF MOTION AND UNOPPOSED MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT

1  amended on September 19, 2022, to fix a typographical error and once again executed

2  by the parties.

3        Plaintiff filed a Motion for Preliminary Approval of Class Action Settlement

4  on September 20, 2022 (Dkt. No. 50), and oral argument was heard by this Court on

5  November 30, 2022.  On January 13, 2023, the Court granted in part and denied in

6  part Plaintiff's motion for preliminary approval, and granted Plaintiff's motion to (1)

7  conditionally certify the class as defined in the settlement agreement; (2) appoint

8  Plaintiff Jane Kouri as class representative; and (3) appoint Nye, Stirling, Hale, Miller

9  & Sweet LLP as class counsel.  *See* Dkt No. 59.  The Court denied the motion for

10  preliminary approval of the proposed Settlement Agreement, finding that the

11  agreement released claims that were not necessarily based on the identical factual

12  predicate as the underlying claims.  On January 10, 2023, the Parties submitted a joint

13  stipulation to amend the proposed Settlement Agreement to address the Court's

14  concern regarding the settlement release provision.  Dkt No. 60.

15        On February 28, 2023, the Court granted Plaintiff's Motion for Preliminary

16  Approval after concluding the revisions contained in the parties' Settlement

17  Agreement, as amended, were satisfactory and set a final fairness hearing for July 12,

18  2023.  Dkt No. 62 (Minute Order).[2]  As described in detail below, Class notice was

19  disseminated in accordance with notice procedures set forth in Plaintiff's Unopposed

20  Motion for Preliminary Approval of Class Action Settlement, *see* Dkt. No. 50 at 24–

21  25, and approved by this Court, *see* Dkt. Nos. 63, 66.

22

23

24

25

---

26  [2] *See also* Dkt. No. 66 (March 14, 2023 Order on Joint Motion for Clarification of

27  Preliminary Approval of Class Action Settlement) (approving the form and content
    of the Settlement Notice, set forth in Exhibit C to the Settlement Agreement, as

28  amended).

## II.    THE TERMS OF THE SETTLEMENT

The Settlement Agreement provides for injunctive relief that is nationwide, comprehensive, and extraordinary and achieves a complete resolution and settlement of all claims and controversies relating to the assertions of Mr. Kouri and the Settlement Class.[3]   In exchange for a release of claims by Mr. Kouri and the Settlement Class, FedEx has agreed to the following injunctive relief:

- Within two months of the Effective Date, FedEx must engage an accessibility consultant for purposes of implementing its obligations under this Agreement.

- Within six months of the Effective Date, FedEx must develop a survey form to assess compliance of its Drop Boxes with 2010 ADA Standards.

- Within 12 months of the Effective Dates, FedEx must create a training video or e-learning/webinar program for individuals the Company engages to assess the compliance of its Drop Boxes on how to complete the assessment using the Survey Form.

- Within 36 months of the Effective Date, FedEx must assess the entirety of its 34,000 Drop Box network using the Survey Form.

- Within 36 months of the Effective Date, FedEx must complete all actions required to render access barriers at its Drop Boxes compliant with 2010 ADA Standards, including inspection of drop-down doors for operating force in excess of applicable federal regulations, and remediate all non-compliant Drop Boxes where appropriate.

- Within 36 months of the Effective Date, FedEx shall acknowledge in writing that it has remediated all access barriers at its Drop Boxes.

---

[3] The Settlement Agreement is described in detail in this Court's February 28, 2023 Order.  *See* Dkt. No. 63.  The Settlement Agreement itself is also in the record.  *See* Dkt. No. 60-1.

- All new FedEx Drop Boxes must conform with 2010 ADA Standards and all new FedEx Drop Boxes installed during the Term of the Settlement.
- Over the course of the Term of the Settlement Agreement, FedEx must provide Class counsel with an Annual Report identifying (1) the locations of Drop Boxes surveyed, (2) the date the survey took place, and (3) any actions taken to remediate access barriers at Drop Boxes in the prior calendar year.
- Class counsel may inspect for ADA compliance up to 15% of the Drop Boxes listed in each Annual Report.

In addition, FedEx must make a payment of $20,000 to Plaintiff Kouri for a full and complete release of his individual California Unruh Act claim. Settlement Agreement § 9.

After all issues pertaining to class and individual relief were resolved, the parties negotiated the issue of reasonable attorneys' fees and costs incurred to date and for future site inspections over the four-year term of the Settlement Agreement. Settlement Agreement at §11.

In sum, the parties' negotiations were extensive and ultimately successful in resolving this action. The Settlement Agreement requires FedEx to assess and, where appropriate, remediate each and every one of its 34,000 Drop Boxes across the country. Accordingly, it affords the Settlement Class complete relief. It further allows Class counsel to monitor the implementation of the injunctive relief over the four-year term of the Settlement Agreement to ensure that FedEx makes good on its commitments. If the Court were to assume for purposes of forming an estimate that it will cost FedEx $150 per Drop Box simply to assess each of its 34,000 Drop Boxes (and it will certainly cost FedEx far more than this to bring the noncompliant Drop Boxes into compliance), the estimated value of that portion of the injunctive relief alone exceeds $5,100,000.

### III.   <u>ARGUMENT</u>

#### A. The Proposed Settlement Exceeds the Standards for Judicial Approval and Provides Excellent Relief to Plaintiff and the Settlement Class

The proposed settlement exceeds the standards for judicial approval and will provide excellent relief to Plaintiff and the Settlement Class.[4]   This settlement provides relief to members of the Settlement Class with the best possible outcome: the injunctive relief and remediation of the offending access barriers present at FedEx Drop Boxes nationwide.  As set forth below, continued litigation would be protracted and costly, causing the Settlement Class to wait years before attaining the very same relief that the Settlement Agreement delivers now, if those continued litigation efforts were successful at all.  Accordingly, final approval of this class action settlement is warranted.

"To approve a settlement, a district court must: (i) ensure notice is sent to all class members; (ii) hold a hearing and make a finding that the settlement is fair, reasonable, and adequate; (iii) confirm that the parties seeking approval file a statement identifying the settlement agreement; and (iv) be shown that class members were given an opportunity to object."  *Swain v. Anders Group, LLC*, 2023 WL 2976368, at *2 (E.D. Cal. Apr. 17, 2023) (citing Fed. R. Civ. P. 23(e)(1)-(5)).  Here,

---

[4] As a threshold matter, final approval of a class action settlement requires an assessment of whether the class satisfies the requirements of Federal Rule of Civil Procedure 23(a) and (b).  *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1019–22 (9th Cir. 1998).  Because no facts that would affect these requirements have changed since this Court preliminarily approved the class on February 28, 2023 (Dkt. No. 63), the Court can incorporate by reference its prior analysis under Rules 23(a) and (b) as set forth in the order granting preliminary approval.  *See e.g., Smith v. Keurig Green Mountain, Inc.*, 2023 WL 2250264, at *4 (N.D. Cal. Feb. 27, 2023); *C.T. v. Calif. Dept's of Social Servs.*, 2021 WL 3192228, at *4 (C.D. Cal. Mar. 1, 2021) (confirming order certifying Settlement Class where Settlement Class has not changed since it was conditionally certified).

PLAINTIFF'S NOTICE OF MOTION AND UNOPPOSED MOTION FOR FINAL
APPROVAL OF CLASS ACTION SETTLEMENT

1  all of the requirements for this Court to approve the settlement have been met.  First,

2  Notice was provided to all Settlement Class members in accordance with the Parties'

3  Notice Plan approved by this Court (Dkt. Nos. 63, 66).  *See* Declaration of Benjamin

4  J. Sweet ("Sweet Decl.") ¶ 3; *see also infra* Section III(B).  Second, the Settlement

5  Agreement, as amended, was filed with this Court on January 20, 2023, *see* Dkt No.

6  60, and was preliminarily approved by this Court, *see* Dkt. No. 63.  Third, the

7  Settlement Class members were provided an opportunity to object on or before June

8  8, 2023.  Dkt No. 59.  Plaintiff has not received any objections to the Settlement.

9  Sweet Decl. ¶ 6.

10  Accordingly, all that remains is for this Court to conduct its final examination

11  of the fairness, reasonableness, and adequacy of the settlement.  For the reasons

12  explained below, the terms of settlement meet and exceed the standards for judicial

13  approval.

14  A class action cannot be settled without court approval based on a

15  determination that the proposed settlement is fair, reasonable, and adequate.  Fed. R.

16  Civ. P. 23(e)(2); *Cmty. Res. for Indep. Living v. Mobility Works of Calif., LLC*, 533

17  F. Supp. 3d 881, 885 (N.D. Cal. 2020).  While the approval of a proposed class action

18  settlement is a matter within the sound discretion of the Court, *see Staton v. Boeing

19  Co.*, 327 F.3d 938, 953 (9th Cir. 2003), "a strong judicial policy that favors

20  settlements, particularly where complex class action litigation is concerned."  *In re

21  Syncor ERISA Litig.*, 516 F.3d 1095, 1101 (9th Cir. 2008) (citations omitted); *see id.*

22  ("This policy is also evident in the Federal Rules of Civil Procedure and the Local

23  Rules of the United States District Court, Central District of California, which

24  encourage facilitating the settlement of cases"); *see also Officers for Justice*, 688 F.2d

25  at 625 ("[V]oluntary conciliation and settlement are the preferred means of dispute

26  resolution.  This is especially true in complex class action litigation[.]").  The court

27  "evaluate[s] the fairness of a settlement as a whole, rather than assessing its individual

28

PLAINTIFF'S NOTICE OF MOTION AND UNOPPOSED MOTION FOR FINAL
APPROVAL OF CLASS ACTION SETTLEMENT

components," as "the question whether a settlement is fundamentally fair within the meaning of Rule 23(e) is different from the question whether the settlement is perfect in the estimation of the reviewing court." *Lane*, 696 F.3d at 818–19.

In 2018, Congress codified Rule 23(e)(2), which identified four "core concerns" that serve as "the primary procedural considerations and substantive qualities that should always matter to the decision whether to approve the proposal." Fed. R. Civ. P. 23(e)(2) advisory committee note to 2018 amendment; *see* 4 Newberg and Rubenstein on Class Actions § 13:48 (6th ed.) (noting the 2018 amendments to Rule 23 codified existing practice amongst the circuit courts); *see Lane v. Facebook, Inc.*, 696 F.3d 811, 819 (9th Cir. 2012) (discussing factors considered by the Ninth Circuit prior to the 2018 revisions to Rule 23(e), as set forth in *Hanlon v. Chrysler Corp.*, 150 F.3d 1011 (9th Cir. 1998)).   Accordingly, to make a final fairness determination, the district court must consider four factors:

> (1) whether the class was adequately represented; (2) whether the proposed settlement was negotiated at arm's length; (3) whether the relief provided for the class is adequate, taking into account the costs, risks, and delay of trial and appeal, the terms of any proposed award of attorneys' fees, and other factors; and (4) whether the proposal treats class members equitably relative to one another.

*Cmty. Res. for Indep. Living v. Mobility Works of Calif., LLC*, 533 F. Supp. 3d 881, 886 (N.D. Cal. 2020); Fed. R. Civ. P. 23(e)(2); *see also Swain v. Anders Group, LLC*, 2023 WL 2976368, at *3–4 (E.D. Cal. Apr. 17, 2023).   Each of these factors weigh strongly in favor of granting final approval of this class action settlement.   For the reasons set forth below, this settlement, extensively negotiated at arms'-length is exceedingly fair, reasonable, and adequate.

PLAINTIFF'S NOTICE OF MOTION AND UNOPPOSED MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT

1               1.  <u>The Settlement Class Received Excellent Representation</u>

2        The first factor—whether "the class representatives and class counsel have

3  adequately represented the class," Fed. R. Civ. P. 23(e)(2)(A)—weighs strongly in

4  favor of final approval.  This inquiry is "redundant of the requirements of Rule

5  23(a)(4) and Rule 23(g), respectively."  4 Newberg and Rubenstein on Class Actions

6  § 13:48 (6th ed.); *see In re MyFord Touch Consumer Litig.*, 2019 WL 1411510, at *8

7  (N.D. Cal. Mar. 28, 2019).  Class representatives are adequate if the named plaintiff

8  and counsel do not have any conflicts of interest with other class members and will

9  prosecute the action vigorously on behalf of the class.  *Hanlon*, 150 F.3d at 1020.

10  Adequate representation of counsel is generally presumed in the absence of contrary

11  evidence.  *See Californians for Disability Rights, Inc. v. California Dep't of Transp.*,

12  249 F.R.D. 334, 349 (N.D. Cal. 2008).

13        This Court's January 13, 2023 Order already concluded that Plaintiff satisfied

14  the adequacy requirement under Rule 23(a)(4) and appointed Nye, Stirling, Hale,

15  Miller & Sweet LLP as Class counsel and Plaintiff Janne Kouri as Class

16  representative.  Dkt No. 59 at 8, 14; *see Hilsley v. Ocean Spray Cranberries, Inc.*,

17  2020 WL 520616, at *5 (S.D. Cal. Jan. 31, 2020) ("Because the Court found that

18  adequacy under Rule 23(a)(4) has been satisfied above, due to the similarity, the

19  adequacy factor under Rule 23(e)(2)(A) is also met.").  Plaintiff has no conflict of

20  interest with the Settlement Class and seeks the same relief.  *See* Dkt No. 59 at 8.

21        Class counsel has extensive experience serving as lead, co-lead or class counsel

22  in dozens of nationwide class action suits in federal courts throughout the United

23  States.  Dkt. 50-1 at ¶¶ 4–9; *Betorina v. Randstad US, L.P.*, 2017 WL 1278758, *4

24  (N.D. Cal. 2017) (finding class counsel adequate, noting class counsel "has extensive

25  experience in class action litigation in California and throughout the country").  In

26  addition, Class counsel also vigorously and diligently prosecuted this action on behalf

27  of the Settlement Class for more than a year and a half.  For example, at the direction

28

PLAINTIFF'S NOTICE OF MOTION AND UNOPPOSED MOTION FOR FINAL
APPROVAL OF CLASS ACTION SETTLEMENT

1   of Class counsel, Plaintiff's investigators conducted a thorough investigation of more
2   than 102 FedEx Drop Box locations across seven states and participated in formal
3   mediation. *See* Dkt. No. 39; Dkt No. 23 at ¶ 29. Plaintiff and Class counsel possessed
4   sufficient information to make an appropriate and informed evaluation of the
5   proposed Settlement. Plaintiff and Class counsel possessed sufficient information to
6   conclude that not only is the proposed settlement fair, reasonable and adequate, but it
7   also serves the Congressional purposes reflected in the ADA. Accordingly, the
8   Settlement Class is adequately represented, and this factor weighs heavily in favor of
9   approval of the proposed settlement.

10                    2.   The Settlement is the Product of an Arms'-Length Negotiation

11          The second factor—whether "the [settlement] proposal was negotiated at arm's
12   length," Fed. R. Civ. P. 23(e)(2)(B)—also weighs in favor of final approval. Where,
13   as here, an agreement is the product of "serious, informed, non-collusive
14   negotiations" conducted by experienced counsel over an "extended period of time,"
15   those facts will weigh in favor of approval. *See, e.g., In re Tableware Antitrust Litig.*,
16   484 F. Supp. 2d 1078, 1079–80 (N.D. Cal. 2007) (granting preliminary approval); *In*
17   *re Tableware Antitrust Litig.*, 2007 WL 4219394, at *3 (N.D. Cal. Nov. 28, 2007)
18   (granting final approval and holding that "extended negotiations that culminated in
19   the settlement indicate that the agreement here was reached in a procedurally sound
20   manner").

21          As this Court previously observed, the Settlement Agreement is the result of
22   "robust arms-length negotiations between counsel over a period of more than eight
23   months." Dkt. No. 59 at 10; *see Hanlon*, 150 F.3d at 1027 (affirming approval of
24   settlement after finding "no evidence to suggest that the settlement was negotiated in
25   haste or in the absence of information illuminating the value of plaintiffs' claims");
26   *Rodriguez v. West Publ'g Corp.*, 563 F.3d 948, 965 (9th Cir. 2009) ("We put a good
27   deal of stock in the product of an arms-length, non-collusive, negotiated resolution.").

28

PLAINTIFF'S NOTICE OF MOTION AND UNOPPOSED MOTION FOR FINAL
APPROVAL OF CLASS ACTION SETTLEMENT

The Parties also participated in a mediation with Hon. Leo Pappas (Ret.) and subsequently continued negotiations that ultimately that helped facilitate the settlement agreement before the Court.  *See* Advisory Committee Notes to 2018 Amendments, Fed. R. Civ. P. 23(e)(2) ("the involvement of a neutral or court-affiliated mediator or facilitator . . . may bear on whether [negotiations] were conducted in a manner that would protect and further the class interests"); *Satchell v. Fed. Exp. Corp.*, 2007 WL 1114010, at *4 (N.D. Cal. Apr. 13, 2007) ("The assistance of an experienced mediator in the settlement process confirms that the settlement is non-collusive.").

### 3.  The Settlement Provides Complete Relief to the Class

The third factor requires the Court to consider whether "the relief provided for the class is adequate, taking into account: (i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims; (iii) the terms of any proposed award of attorney's fees, including timing of payment; and (iv) any agreement required to be identified under Rule 23(e)(3)."  Fed. R. Civ. P. 23(e)(2)(C). Given the complete relief for the Settlement Class accomplished through the settlement, the reasonableness of the proposed fee award (particularly in light of Class counsel's subsequent monitoring over four years), and the attendant risks of continued litigation, this factor weighs heavily in favor of settlement.

### i.  *The costs, risks, and delay of trial and appeal*

When considering the "the costs, risks, and delay of trial and appeal," Fed. R. Civ. P. 23(e)(2)(C)(i), courts in the Ninth Circuit evaluate "the strength of the plaintiffs' case; the risk, expense, complexity, and likely duration of further litigation; [and] the risk of maintaining class action status throughout the trial."  *Hanlon*, 150 F.3d at 1026.  Although the Settlement Agreement is the result of a thorough investigation, continued litigation would be costly and result in a substantial delay of

whatever potential relief might be obtained in the absence of a settlement.   For example, should this litigation continue, Plaintiff would move for class certification (which Defendant would have opposed), and Defendant would move for summary judgment on Plaintiff's individual claims under the ADA and Unruh Act (which Plaintiff would have opposed).  *See* Dkt No. 30 at 5 (Joint Rule 26(f) Report, Dec. 31, 2021).  Additionally, the Parties would presumably engage in intense pretrial motions practice and will have to endure the substantial amount of time and money that would be expended on a trial and any subsequent appeals.  Meanwhile, persons with mobility disabilities throughout the country would continue to encounter substantial difficulties utilizing FedEx Drop Boxes—or be unable to access them at all.  *See In re Anthem, Inc. Data Breach Litig.*, 327 F.R.D. 299, 318 (N.D. Cal. 2018) (granting final approval where "further litigation would have been costly and uncertain and would have detrimentally delayed any potential relief for the Class," whereas the relief provided by settlement was "timely, certain, and meaningful"); *Rodriguez*, 563 F.3d at 966 (risk, expense, complexity and duration of litigation supports the adequacy of relief).

On the other hand, through settlement, Plaintiff was able to achieve the exact relief originally sought: injunctive relief that (1) will ensure that *all* of FedEx's approximately 34,000 Drop Boxes will conform to the ADA's reach range and operable parts accessibility standards and (2) puts in place a process for identifying and removing barriers at all of the FedEx Drop Boxes throughout the United States. This settlement permits a resolution of the claims at issue, in a manner that is fair, reasonable and adequate to the Settlement Class, while at the same time serving the Congressional purposes of affording persons with disabilities "full and equal enjoyment of the goods, services, privileges, advantages, or accommodations of any place of public accommodation".  42 U.S.C. § 12182(a).  Accordingly, resolution of the claims in dispute benefits the Settlement Class and members of the

- 18 -

mobility-disabled community. *See Cmty. Res. for Indep. Living v. Mobility Works of California, LLC*, 533 F. Supp. 3d 881, 887 (N.D. Cal. 2020) ("In the interim, Plaintiffs and other drivers with disabilities who wanted to make full use of Mobility Works' services would have been waiting for relief. Moreover, the end result of the settlement is that Plaintiffs achieved the exact policy and practice changes they sought.") (granting motion for final approval of class action settlement resolving ADA and Unruh Act claims); *Nevarez v. Forty Niners Football Co., LLC*, 474 F. Supp. 3d 1041, 1046 (N.D. Cal.) (the importance of accessibility of facility to Class Members considered when evaluating adequacy of settlement).

### ii.    The effectiveness of distributing relief to the class

The Settlement Agreement provides only injunctive relief that applies generally and equally, according, there is no need to examine a method of distribution. *See Romero v. Securus Techs., Inc.*, 2020 WL 6799401, at *5 (S.D. Cal. Nov. 19, 2020).

### iii.    The terms of the proposed award of attorneys' fees

The statute at issue in this case allows prevailing plaintiffs to recover their reasonable fees and costs. *See* 42 U.S.C. § 12205. In the context of a class settlement, "courts have an independent obligation to ensure that" any award of fees and costs "is reasonable, even if the parties have already agreed to an amount." *In re Bluetooth*, 654 F.3d at 941. In *Briseño*, the Ninth Circuit stressed that, before approving class action settlements, district courts must "scrutiniz[e] the fee arrangement for potential collusion or unfairness to the class" by analyzing three factors: (1) whether counsel "receive[d] a disproportionate distribution of the settlement"; (2) whether the parties agreed to a "clear sailing arrangement"; and (3) whether the settlement includes a "kicker" or "reverter" clause. *See Briseño v. Henderson*, 998 F.3d 1014, 1023 (9th Cir. 2021).

Here, Defendant has agreed to pay Class counsel a total of $900,000.00. This comprehensive fee and cost award is reasonable given that it is inclusive of attorney

PLAINTIFF'S NOTICE OF MOTION AND UNOPPOSED MOTION FOR FINAL
APPROVAL OF CLASS ACTION SETTLEMENT

time expended in the prosecution of this Action, costs of counsel's extensive site investigations of 102 Drop Boxes in seven different states, and of future fees for monitoring and inspecting up to 15% of Defendant's Drop Boxes over the four-year term provided for the in the Settlement Agreement. *See* Settlement Agreement at § 11.

As explained in Plaintiff's concurrently filed Unopposed Motion for Attorney's Fees and Costs, *see* Fees Mot. § IV.E (incorporated herein by reference), the total fee award requested includes a lodestar figure of $349,821.99 for counsel's fees and costs already incurred to date. *See In re Bluetooth*, 654 F.3d at 941 (the lodestar method is appropriate where injunctive relief is part of the settlement and the relief obtained is "not easily monetized"); *Campbell v. Facebook, Inc.*, 951 F.3d 1106, 1126 (9th Cir. 2020) (courts are not required to perform a "crosscheck" using the percentage-of-the-fund method given difficulty in measuring dollar value of injunctive relief); *McNamara v. Infusion Software, Inc.*, 2020 WL 4921984, at *1 (D. Ariz. Aug. 21, 2020)(approving use of lodestar method rather than percentage-of-fund method where it was "clear from the Settlement Agreement" and a prior court order that the fees and costs awarded to Plaintiff were "not included in the collective action award itself," but came from a separate sum to be paid by Defendants); *Doe v. United Healthcare Ins. Co.*, 2014 WL 12586448, at *2 (C.D. Cal. Oct. 15, 2014) ("Because this is not a common fund case, reasonable attorneys' fees are calculated using the lodestar method alone."). The remainder of the requested fee and cost award accounts for counsel's future fees over the four-year term provided for in the Settlement Agreement during which Plaintiff's counsel will ensure FedEx's compliance with the Settlement Agreement and conduct inspections of up to 15% of its Drop Boxes. *See* Settlement Agreement §§ 7.5.1, 8; Fees Mot. § IV.C (setting forth case law demonstrating post-judgment monitoring is a compensable activity for which counsel is entitled to a reasonable fee).

PLAINTIFF'S NOTICE OF MOTION AND UNOPPOSED MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT

This inclusive fee and cost award is entirely devoid of any hint of potential collusion or unfairness to the Settlement Class.   First, because the Settlement Agreement provides for injunctive relief and does not involve a common fund, none of the attorneys' fees come from money designated for the class.   Accordingly, there are no concerns that counsel "receive[d] a disproportionate distribution of the settlement." *Briseño*, 998 F.3d at 1023; *see In re Quaker Oats Labeling Litig.*, 2014 WL 12616763, at *1 (N.D. Cal. July 29, 2014) (granting motion for final approval of class action settlement providing only injunctive relief and granting motion for attorney fees, finding "the fee award in no sense can be seen as diminishing the cash available to the class, as it would in a prototypical 'common fund' case" as the "fee award is based on statute, not a common fund theory").   Although a district court "must ensure that both the amount and mode of payment of attorneys' fees are fair, regardless of whether the attorneys' fees come from a common fund or are otherwise paid," *Bluetooth*, 654 F.3d at 949, in non-common fund cases like this, "where the defendant pays the attorneys directly and independent of any other monetary obligation, the Court's fiduciary role in overseeing the award is greatly reduced' because there is no conflict of interest between attorneys and class members," *Atzin v. Anthem, Inc.*, 2022 WL 4238053, at *5 (C.D. Cal. Sept. 14, 2022) (internal quotation marks omitted).

Nor does the Settlement Agreement include a "clear-sailing arrangement." *Bluetooth*, 654 F.3d at 947 (clear-sailing arrangements in which "defendants agree[ ] not to object to an award of attorneys' fees" "carr[y] the potential of enabling a defendant to pay class counsel excessive fees and costs in exchange for counsel accepting an unfair settlement on behalf of the class") (internal quotation marks and citations omitted); *accord Campbell v. Facebook*, Inc., 951 F.3d 1106, 1127 (9th Cir. 2020) ("The concern with a 'clear sailing' arrangement is that class counsel may have obtained too little for the class 'in exchange for red-carpet treatment on fees.'"

PLAINTIFF'S NOTICE OF MOTION AND UNOPPOSED MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT

(quoting *Bluetooth*, 654 F.3d at 947)).  Finally, there is no "kicker (or reverter) clause" in the Settlement Agreement.  *Cf. Briseño*, 998 F.3d at 1023 (a "kicker (or reverter) clause" "returns unawarded fees to the defendant, rather than the class").

### iv.    All required agreements have been disclosed

Plaintiff has identified all required agreements made in connection with the proposed settlement.  *See* Fed. R. Civ. P. 23(e)(3) ("The parties seeking approval must file a statement identifying any agreement made in connection with the proposal."). The Settlement Agreement makes clear that Plaintiff Kouri's receipt of $20,000 is in exchange for his full and complete release of *his* individual California Unruh Act claim, *see* Settlement Agreement § 9.1, which provides for statutory minimum damages pursuant to California Civil Code § 52 for every violation (i.e., each time a mobility-impaired, wheelchair using individual attempted to independently use one of Defendants' unstaffed Drop Boxes in California), *see* Dkt No. 23 (First Amended Complaint ¶ 62).  Additionally, the Settlement Agreement contains an integration clause stating that the Settlement Agreement contains all agreements, conditions, promises, and covenants among Defendant, Plaintiff, Class counsel, and the Settlement Class.  *See* Settlement Agreement § 14.

### 4.  The Settlement Treats Settlement Class Members Equitably

As the terms of the Settlement Agreement provide for injunctive relief, Plaintiff and the Settlement Class will receive exactly the same injunctive relief and therefore the Settlement Agreement does not improperly grant preferential treatment to certain segments of the class.  *See Cmty. Res. for Indep. Living*, 533 F. Supp. 3d at 889 (finding settlement agreement in ADA case providing for injunctive relief and incentive award to named plaintiff treated plaintiffs and all other class members equitably, relative to one another and weighed in favor of approval); *Romero*, 2020

PLAINTIFF'S NOTICE OF MOTION AND UNOPPOSED MOTION FOR FINAL
APPROVAL OF CLASS ACTION SETTLEMENT

WL 6799401, at *5 (granting final approval where injunctive relief appeared to benefit each class member relatively equally).

The Settlement Agreement does provide a $20,000 payment to Plaintiff Kouri in exchange for a general release of his individual claims brought pursuant to California's Unruh Act.  *See* Settlement Agreement § 9.1; *see also C.T. v. California Dep't of Soc. Servs.*, 2021 WL 3192223, at *2 (C.D. Cal. Mar. 18, 2021) (California's Unruh Civil Rights Act entitles claimants to recover a minimum of $4,000 per incident in violation of the ADA, Cal. Civ. Code §§ 51(f), 55.56, and damages are available absent any showing of intent).  Although Plaintiff's recovery is not a service award, *see C.T. Calif. Dep't of Social Servs.*, 2021 WL 3192228, at *2 (C.D. Cal. Mar. 1, 2021) (granting final approval where settlement agreement provided for separate award for plaintiff's claims for damages), "the Ninth Circuit has recognized that service awards to named plaintiffs in a class action are permissible and do not render a settlement unfair or unreasonable." *Harris v. Vector Mktg. Corp.*, 2011 WL 1627973, at *9 (N.D. Cal. Apr. 29, 2011) (citing *Stanton v. Boeing Co.*, 327 F.3d 938, 977 (9th Cir. 2003)).  Accordingly, the injunctive relief benefits each Settlement Class member equally.

### B. Adequate Notice of The Parties' Proposed Settlement Has Been Provided to The Settlement Class, And There Have Been No Objections

The notice plan previously approved by this Court was implemented and complies with Rule 23(c)(2)(B).  *See* Dkt No. 63 (Minute Order); Dkt No. 66 (Order approving the form and content of the Settlement Notice as set forth in Exhibit C to the Settlement Agreement, as amended); Sweet Decl. ¶¶ 3–5.  For the reasons explained below, Plaintiff respectfully requests that this Court find that the parties have sufficiently provided the best practicable notice to the Settlement Class Members.

PLAINTIFF'S NOTICE OF MOTION AND UNOPPOSED MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT

Under Federal Rule of Civil Procedure 23(e), the Court "must direct notice in a reasonable manner to all Settlement Class members who would be bound by the proposal." Fed. R. Civ. P. 23(e)(1); *Cmty. Res. for Indep. Living v. Mobility Works of Calif., LLC*, 533 F. Supp. 3d 881, 889 (N.D. Cal. 2020) ("Notice to a settlement class certified under Rule 23(b)(2) is within the Court's discretion.") (citing Fed. R. Civ. P. 23(c)(2)(a), (e)(1)).    Rule 23(c)(2)(B) requires "the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort."    The notice must "clearly and concisely state in plain, easily understood language" the nature of the action, the class definition, and the Settlement Class members' right to exclude themselves from the class. Fed. R. Civ. P. 23(c)(2)(B).    Notice provided under Rule 23(e) must "generally describe[ ] the terms of the settlement in sufficient detail to alert those with adverse viewpoint to investigate and to come forward and be heard." *Lane*, 696 F.3d at 826 (alteration in original) (quoting *Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 962 (9th Cir. 2009)). Although Rule 23 requires that reasonable efforts be made to reach all Settlement Class members, it does not require that each Settlement Class member actually receive notice. *See Silber v. Mabon*, 18 F.3d 1449, 1454 (9th Cir. 1994) (noting that the standard for class notice is "best practicable" notice, not "actually received" notice).

In accordance with the parties' proposed notice program described in Plaintiff's Motion for Preliminary Approval (Dkt No. 50 at 23–25) and Section 10.2 of the Settlement Agreement and as approved in the Preliminary Approval Order, a copy of the Full Notice of Class Action Settlement was: (a) disseminated to a list of organizations who provide services to or advocate on behalf of persons with mobility disabilities;[5] (b) distributed via a nationwide social media campaign to inform

---

[5] *See* Sweet Decl. ¶ 3 (listing organizations serving individuals with mobility disabilities to whom Plaintiff's counsel sent Notice via electronic mail or U.S. Mail).

PLAINTIFF'S NOTICE OF MOTION AND UNOPPOSED MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT

Settlement Class members about the settlement; and (c) published on a public website dedicated to the Class settlement, at https://federalexpressdropboxsettlement.com on March 23, 2023, and remains posted presently.  *See* Sweet Decl. ¶ 4.

Additionally, Class Action Fairness Act ("CAFA") notice requirements have been satisfied.  Pursuant to 28 U.S.C. § 1715(b) and the Court's Preliminary Approval Order, Defendant has certified that, on December 15, 2022, March 13, 2023, and March 21, 2023, Defendant sent the letters attached as Exhibit A, Exhibit B, and Exhibit C, respectively, along with an enclosed thumb drive containing electronic documents, to the United States Attorney General and the attorneys general of the states with known class members.  *See* Declaration of John W. Campbell ("Campbell Decl.") ¶ 3–5, Exs. A–C.  Defendant further spent 10,000 on a national social media campaign to provide settlement notice to class members.  *See* Campbell Decl. ¶ 7.  Accordingly, as Notice containing the information required by 28 U.S.C. § 1715(b) was served more than 90 days before the date of the final approval hearing on July 13, 2023, notice was timely served in the manner required.

Importantly, not a single objection has been raised by any Settlement Class member.  The absence of any negative reaction whatsoever weighs heavily in favor of final approval.  *Cmty. Res. for Indep. Living*, 533 F. Supp. 3d at 890 (granting motion for final approval); *Nevarez*, 474 F. Supp. 3d at 1046 ("Finally, the absence of any objections or exclusions further supports final approval of the Settlement."); *Chun-Hoon v. McKee Foods Corp.*, 716 F. Supp. 2d 848, 852 (N.D. Cal. 2010) ("Accordingly, the overwhelming positive reaction of the class members supports settlement.").

### C. Courts Throughout the Federal Judiciary Have Approved Analogous Settlements of Class Actions Asserting ADA Violations

Federal District Courts have routinely approved similar class settlements under the ADA.  *See, e.g. Nevarez v. Forty Niners Football Co., LLC*, 474 F. Supp. 3d 1041

PLAINTIFF'S NOTICE OF MOTION AND UNOPPOSED MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT

(N.D. Cal. 2020) (granting final approval of settlement for class action of mobility-disabled individuals who alleged defendant's stadium had unlawful barriers, requiring remediation efforts among other forms of relief); *Civil Rights Edu. & Enforcement Cntr. v. Ashford Hospitality Trust, Inc.*, 2016 WL 1177950, at *5 (N.D. Cal. Mar. 22, 2016) (granting final approval and awarding fees in ADA settlement for work performed and fees for future monitoring and evaluating compliance with the settlement); *Colorado Cross-Disability Coal. v. Abercrombie & Fitch Co.*, 2015 WL 5695890 (D. Colo. Sept. 29, 2015) (granting final approval of settlement for class of mobility-disabled individuals who alleged defendant's nationwide stores had unlawful barriers, requiring remediation efforts among other relief); *Vallabhapurapu v. Burger King Corp.*, 2012 WL 5349389 (N.D. Cal. Oct. 29, 2012) (granting final approval of class settlement of mobility-disabled individuals alleging that defendant pursued discriminatory policies that resulted in unlawful barriers at its nationwide stores; settlement required injunctive relief, damages, and attorneys' fees of roughly $4.6 million); *Pereira v. Ralph's Grocery Co.*, 2010 WL 6510346 (C.D. Cal. July 1, 2010) (granting final approval of settlement for class of mobility-disabled individuals alleging unlawful barriers at defendant's stores violated ADA, providing for remediation efforts and attorneys' fees of $593,000).

## IV.   CONCLUSION

Plaintiff respectfully submits that the proposed settlement is fair, reasonable, and adequate and represents a responsible and appropriate compromise of this litigation.  For all of the foregoing reasons, Plaintiff respectfully requests that the Court:

1. Grant Plaintiff's Unopposed Motion for Final Approval and approve settlement of the action between Plaintiff and Defendant, as set forth in the Settlement Agreement, as fair, just, reasonable, and adequate and direct the

PLAINTIFF'S NOTICE OF MOTION AND UNOPPOSED MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT

Parties to perform their settlement in accordance with the terms set forth in the Settlement Agreement;

2. Approve an award to Class counsel for $900,000 in attorneys' fees and costs and find that these amounts are warranted and reasonable;

3. Approve an award to Plaintiff Janne Kouri for $20,000 in exchange for a general release of his individual claims and find that this amount is warranted and reasonable;

4. Dismiss Plaintiff's case with prejudice, in accordance with the terms of the Settlement Agreement; and

5. Retain jurisdiction to enforce the Settlement Agreement and resolve any disputes that might arise during its term.

Dated: June 15, 2023                    NYE, STIRLING, HALE, MILLER & SWEET, LLP

                                        By:    */s/ Benjamin J. Sweet*
                                        _____
                                               Benjamin J. Sweet
                                               Jordan T. Porter
                                               Jonathan D. Miller

                                        *Attorneys for Lead Plaintiff Janne Kouri and the Settlement Class*

- 27 -

PLAINTIFF'S NOTICE OF MOTION AND UNOPPOSED MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT