JS-6

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| JANNE KOURI, individually on behalf of himself and all others similarly situated, <br><br> Plaintiff, <br><br> v. <br><br> FEDERAL EXPRESS CORPORATION; and DOES 1-25, inclusive, <br><br> Defendants. | Case No. 2:21-cv-08066-SPG-JEM <br><br> **ORDER GRANTING PLAINTIFF'S MOTIONS FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND FOR ATTORNEYS' FEES AND COSTS [ECF NOS. 67, 68]** |

Before the Court is Plaintiff Janne Kouri's unopposed motions for final approval of class action settlement and for attorneys' fees and costs. (ECF Nos. 67, 68). The Court heard oral argument on July 12, 2023. Having considered the submissions of the parties, the relevant law, the record in this case, and the arguments of counsel during the hearing, the Court hereby **GRANTS** Plaintiff's motions.

## I. BACKGROUND

### A. Plaintiff's Allegations

This is a putative nationwide civil rights class action lawsuit brought by Plaintiff Janne Kouri against Defendant Federal Express Corporation ("FedEx") seeking to repair FedEx's drop boxes throughout the United States.  Plaintiff is a California resident who requires use of a wheelchair for mobility after suffering a spinal cord injury in 2006.  (ECF No. 23 ¶ 9).  Plaintiff's claims arise from having experienced great difficulty using FedEx's drop boxes.  (*Id.* ¶ 3).

FedEx maintains more than 34,000 unstaffed drop boxes to enable customers to drop off packages in office buildings, shopping centers, and corporate and industrial parks.  (*Id.* ¶¶ 2, 19).  The drop boxes are uniform in size and design.  (*Id.* ¶ 16).  Each drop box is equipped with a lift door, which is operated by reaching for the lip of the door, pushing the door in an upwards motion, and then accessing the contents of the drop box.  (*Id.* ¶ 18).  Plaintiff experienced great difficulty using FedEx's drop boxes because they required him to reach excessively and required him to exert too much force to operate.  (*Id.* ¶ 26).

### B. Procedural History

Plaintiff commenced this case on October 9, 2021, and filed the operative first amended complaint on November 18, 2021.  (ECF No. 23).  On September 20, 2022, Plaintiff filed an unopposed motion for preliminary approval of class action settlement.  (ECF No. 50).  On November 30, 2022, this Court held a hearing on Plaintiff's motion.  (ECF No. 57).  On January 13, 2023, the Court granted in part and denied in part Plaintiff's motion for preliminary approval.  (ECF No. 59 (the "January 13 Order")).  Specifically, the Court granted Plaintiff's motion to: (1) conditionally certify the class as defined in the settlement agreement; (2) appoint Plaintiff Jane Kouri as class representative; and (3) appoint Nye, Stirling, Hale, Miller & Sweet LLP as class counsel.  (*Id.*).  The Court denied Plaintiff's motion for preliminary approval of the proposed settlement agreement, finding that the agreement released claims that were not necessarily based on the identical factual predicate as the underlying claims.  (*Id.*).

On January 10, 2023, the Parties submitted a joint stipulation to amend the proposed settlement agreement to address the Court's concern regarding the settlement release provision. (ECF Nos. 60; 60-1 (the "Settlement Agreement")). On February 28, 2023, the Court granted Plaintiff's Motion for Preliminary Approval of the amended and final Settlement Agreement. (ECF No. 62).

## C.   The Settlement Agreement

The parties engaged in extensive settlement negotiations over the course of approximately eight months. (ECF No. 68 ("Mot.") at 8). Their settlement efforts included a mediation session with the Honorable Leo Pappas, Ret., on March 10, 2022. (*Id.*). The Settlement Agreement provides the following key provisions:

### 1.   Class Definition

The Settlement Agreements defines the putative class as "all persons with qualified mobility disabilities who have attempted to use a Federal Express Drop Box in the past two years in the United States." (Settlement Agreement § 3.2).

### 2.   Injunctive Relief

FedEx has agreed to the following injunctive relief:

- Implementation of an ADA Consultant: Within two months of the Effective Date, FedEx must engage an accessibility consultant for purposes of implementing its obligations arising under the Settlement Agreement. *See* (*id.* § 7.1).
- ADA Compliance Survey Form: Within six months of the Effective Date, FedEx must develop a survey form to assess compliance of its drop boxes with 2010 ADA Standards, which the accessibility consultant shall then review and make appropriate recommendations to FedEx. *See* (*id.* § 7.2).
- Employee Training Program: Within 12 months of the Effective Date, FedEx must create a training video or e-learning/webinar program for individuals the Company engages to assess the compliance of its drop boxes on how to complete the assessment using the Survey Form. *See* (*id.* § 7.3).

- Drop Box Assessment: Within 36 months of the Effective Date, FedEx employees who received the training program must assess the entirety of FedEx's 34,000 Drop Box network using the Survey Form. *See* (*id.* § 7.4.1).

- Drop Box Remediation and Acknowledgment: Within 36 months of the Effective Date, FedEx must complete all actions required to render access barriers at its drop boxes compliant with 2010 ADA Standards, including inspection of drop-down doors for operating force in excess of applicable federal regulations, and remediate all non-compliant drop boxes where appropriate. FedEx must then acknowledge in writing when it has remediated all access barriers at its drop boxes. *See* (*id.* § 7.4.2).

- New Drop Boxes Must Meet ADA Standards: All new FedEx drop boxes installed during the four-year term must conform with 2010 ADA Standards and FedEx agrees to survey any new drop boxes using the Survey Form. *See* (*id.* § 7.5.2).

In addition to the provisions above, the Settlement Agreement also provides a four-year period during which Class counsel will monitor FedEx's compliance with the terms of the Settlement Agreement and receive annual reports from FedEx. FedEx has agreed to the following post-settlement monitoring:

- ADA Drop Box Notice. Within six months of the Effective Date, FedEx will draft a notice to its drop box team with specific reference to ADA compliance and agrees to send a copy of the final proposed Notice to Class counsel, which Class counsel may then review and provide comments to FedEx. (*Id.* § 7.5.1).

- Annual Reports. Over the course of the four-year term, FedEx must provide Class counsel with an Annual Report identifying (1) the locations of drop boxes surveyed, (2) the date the survey took place, and (3) any actions taken to remediate access barriers at drop boxes in the prior calendar year. (*Id.* § 8.1).

- Drop Box Inspections by Class counsel. After receiving the Annual Report, Class counsel may inspect up to 15% of the drop boxes listed in each Annual Report, the costs of which will be borne solely by Class counsel. (*Id.* § 8.2). As all 34,000 drop

1  boxes must be surveyed, Class counsel may inspect up to 5,100 drop boxes over the

2  four-year term.

3  　　　　　　　　3.　　Attorneys' Fees and Costs

4  　　　　The putative class will be represented by Nye, Stirling, Hale, Miller & Sweet, LLP

5  ("Class Counsel").  (*Id.* § 3.4).  FedEx agrees to pay Class Counsel $900,000 inclusive of

6  attorney time expended in the prosecution of this action and future fees for monitoring and

7  inspections over the four-year term of the Settlement Agreement.  (*Id.* § 11).  FedEx also

8  agrees to pay lead plaintiff Janne Kouri $20,000.  (*Id.* § 9.1).

9  　　　　　　　　4.　　Release of Claims

10  　　　　Under the Settlement Agreement, class members release claims against FedEx for

11  "all claims, rights, demands, charges, complaints, actions, suits, and causes of action for

12  injunctive or declaratory relief arising out of the allegations in the Amended Complaint

13  through the date of Final Approval."  (*Id.* ¶ 13.1.2).  Class members also release "claims,

14  rights, demands, charges, complaints, actions, suits, causes of action, or liabilities of any

15  kind for injunctive or declaratory relief based on conduct that occurs after Final Approval

16  of this Agreement and during the Term of this Agreement to the extent that such claims

17  arise out of or relate to actions, omissions, or conduct that are being addressed under the

18  terms of this Agreement."  (*Id.*).

19  　　**D.　　Notice**

20  　　　　In advance of the final fairness hearing, class notice was disseminated in accordance

21  with notice procedures approved by this Court.  (ECF Nos. 63, 66). The class notice

22  included the full amount of the fees and costs award requested here.  No Class members

23  have objected to Plaintiff's requested fee award.  *See* (ECF No. 68-1 ¶ 6).

24  **II.　　LEGAL STANDARD**

25  　　　　Parties seeking class certification for settlement purposes must satisfy the

26  requirements of Federal Rule of Civil Procedure 23.  *Amchem Prods., Inc. v. Windsor*, 521

27  U.S. 591, 620 (1997).  In considering such a request, the court must give the Rule 23

28  certification factors "undiluted, even heightened, attention in the settlement context."  *Id.*

Once a class is certified, Rule 23(e) provides that "[t]he claims, issues, or defenses of a certified class—or a class proposed to be certified for purposes of settlement—may be settled . . . only with the court's approval." Fed. R. Civ. P. 23(e). "The purpose of Rule 23(e) is to protect the unnamed members of the class from unjust or unfair settlements affecting their rights." *In re Syncor ERISA Litig.*, 516 F.3d 1095, 1100 (9th Cir. 2008). Accordingly, before approving a class action settlement under Rule 23, a district court must conclude that the settlement is "fundamentally fair, adequate, and reasonable." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998). In the Ninth Circuit there is a "strong judicial policy that favors settlements, particularly where complex class action litigation is concerned." *Allen v. Bedolla*, 787 F.3d 1218, 1223 (9th Cir. 2015) (quoting *In re Syncor*, 516 F.3d at 1101).

## III.   FINAL SETTLEMENT APPROVAL

The parties seek certification of the settlement class pursuant to Rule 23. For the reasons stated below, the Court finds that all of Rule 23's requirements have been satisfied.

### A.   Rule 23(a) and (b) Requirements

In its January 13 Order, the Court certified a provisional settlement class. (ECF No. 59). The Court "need not find anew that the settlement class meets the certification requirements of Rule 23(a) and (b)." *Adoma v. Univ. of Phoenix, Inc.*, 913 F. Supp. 2d 964, 974 (E.D. Cal. 2012); *see also Smith v. Keurig Green Mountain, Inc.*, No. 18-CV-06690-HSG, 2023 WL 2250264, at *4 (N.D. Cal. Feb. 27, 2023) ("Because no facts that would affect these requirements have changed since the Court preliminarily approved the class . . ., this order incorporates by reference the Court's prior analysis under Rules 23(a) and (b) as set forth in the order granting preliminary approval."). Here, the Settlement Class has not changed since it was conditionally certified. All the criteria for class certification remain satisfied. Therefore, the Court confirms its January 13 Order certifying the Settlement Class.

**B.    Rule 23(e)**

Once it has been established that the proposed settlement would bind class members, "the court may approve it only after a hearing and only finding that it is fair, reasonable, and adequate" after considering the following factors:

(A) the class representatives and class counsel have adequately represented the class;

(B) the proposal was negotiated at arm's length;

(C) the relief provided for the class is adequate, taking into account:

(i) the costs, risks, and delay of trial and appeal;

(ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;

(iii) the terms of any proposed award of attorney's fees, including timing of payment; and

(iv) any agreement required to be identified under Rule 23(e)(3); and

(D) the proposal treats class members equitably relative to each other.

Fed. R. Civ. P. 23(e)(2).  Where the parties reach a class action settlement prior to class certification, the Ninth Circuit has cautioned that such settlement agreements "must withstand an even higher level of scrutiny for evidence of collusion or other conflicts of interest than is ordinarily required under Rule 23(e) before securing the court's approval as fair." *Roes, 1-2 v. SFBSC Mgmt., LLC*, 944 F.3d 1035, 1048–49 (9th Cir. 2019) (citing *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 946 (9th Cir. 2011)).  A more "exacting review is warranted to ensure that class representatives and their counsel do not secure a disproportionate benefit at the expense of the unnamed plaintiffs who class counsel had a duty to represent." *Id*. (quotations omitted).

1.    Adequacy of Representation by Class Representatives and Class Counsel

The first factor requires that the class representatives and class counsel have adequately represented the class.  Fed. R. Civ. P. 23(e)(2)(A).  Class representatives are adequate if the named plaintiff and counsel do not have any conflicts of interest with other

class members and will prosecute the action vigorously on behalf of the class. *Hanlon*, 150 F.3d at 1020. Adequate representation of counsel is generally presumed in the absence of contrary evidence. *See Californians for Disability Rights, Inc. v. Cal. Dep't of Transp.*, 249 F.R.D. 334, 349 (N.D. Cal. 2008).

In the January 13 Order, this Court concluded that Plaintiff satisfied the adequacy requirement under Rule 23(a)(4) and appointed Nye, Stirling, Hale, Miller & Sweet LLP as Class Counsel and Plaintiff Janne Kouri as Class representative. (ECF No. 59 at 8, 14); *see Hilsley v. Ocean Spray Cranberries, Inc.*, No. 3:17-CV-2335-GPC-MDD, 2020 WL 520616, at *5 (S.D. Cal. Jan. 31, 2020) ("Because the Court found that adequacy under Rule 23(a)(4) has been satisfied above, due to the similarity, the adequacy factor under Rule 23(e)(2)(A) is also met."). Plaintiff and Class Counsel possessed sufficient information to make an appropriate and informed evaluation of the proposed Settlement and to conclude that, not only is the proposed settlement fair, reasonable and adequate, but it also serves the Congressional purposes reflected in the ADA. Accordingly, the Settlement Class is adequately represented, and this factor weighs in favor of approval of the proposed settlement.

### 2.   Arm's Length Negotiation

The second factor requires that the proposed settlement have been negotiated at "arm's length." Fed. R. Civ. P. 23(e)(2)(B). As this Court previously observed, the Settlement Agreement is the result of "robust arms-length negotiations between counsel over a period of more than eight months." (January 13 Order at 10); *see Hanlon*, 150 F.3d at 1027 (affirming approval of settlement after finding "no evidence to suggest that the settlement was negotiated in haste or in the absence of information illuminating the value of plaintiffs' claims"); *Rodriguez v. West Publ'g Corp.*, 563 F.3d 948, 965 (9th Cir. 2009) ("We put a good deal of stock in the product of an arms-length, non-collusive, negotiated resolution."). The Parties also participated in a mediation with Hon. Leo Pappas (Ret.) and subsequently continued negotiations that ultimately helped facilitate the settlement agreement before the Court. *See* Fed. R. Civ. P. 23(e), 2018 Advisory Committee Notes

("the involvement of a neutral or court-affiliated mediator or facilitator . . . may bear on whether [negotiations] were conducted in a manner that would protect and further the class interests"). This factor thus weighs in favor of approval of the proposed settlement.

### 3.   Adequacy of the Relief

The third factor requires the court to consider: "(i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims; (iii) the terms of any proposed award of attorneys' fees, including timing of payment; and (iv) any agreement required to be identified under Rule 23(e)(3)." Fed. R. Civ. P. 23(e)(2)(C). The Court addresses each in turn.

#### a)   *Costs, Risks, and Delay of Trial and Appeal*

"Often, courts may need to forecast the likely range of possible classwide recoveries and the likelihood of success in obtaining such results." Fed. R. Civ. P. 23(e), 2018 Advisory Committee Notes. When considering "the costs, risks, and delay of trial and appeal," Fed. R. Civ. P. 23(e)(2)(C)(i), courts in the Ninth Circuit evaluate "the strength of the plaintiffs' case; the risk, expense, complexity, and likely duration of further litigation; [and] the risk of maintaining class action status throughout the trial." *Hanlon*, 150 F.3d at 1026. "Generally, unless the settlement is clearly inadequate, its acceptance and approval are preferable to lengthy and expensive litigation with uncertain results." *Ching v. Siemens Indus., Inc.*, No. 11-cv-04838-MEJ, 2014 WL 2926210, at *4 (N.D. Cal. June 27, 2014) (quotations omitted). Although the Settlement Agreement is the result of a thorough investigation, continued litigation would be costly and result in a substantial delay of whatever potential relief might be obtained in the absence of a settlement. For example, should this litigation continue, Plaintiff would move for class certification (which Defendant would have opposed), and Defendant would move for summary judgment on Plaintiff's individual claims under the ADA and Unruh Act (which Plaintiff would have opposed). *See* (ECF No. 30 at 5). In reaching a settlement, Plaintiffs have ensured a favorable recovery for the class. *See Rodriguez*, 563 F.3d at 966 (finding litigation risks

weigh in favor of approving class settlement).  Accordingly, these factors also weigh in favor of approving the settlement.  *See Ching*, 2014 WL 2926210, at *4 (favoring settlement to protracted litigation).

> b) *Effectiveness of Proposed Method of Relief Distribution*

The Settlement Agreement provides only injunctive relief that applies generally and equally; thus, there is no need for the Court to examine a method of distribution.  *See Romero v. Securus Techs., Inc.*, No. 16cv1283 JM (MDD), 2020 WL 6799401, at *5 (S.D. Cal. Nov. 19, 2020).

> c) *Proposed Award of Attorneys' Fees*

The statute at issue in this case allows prevailing plaintiffs to recover their reasonable fees and costs.  *See* 42 U.S.C. § 12205.  In the context of a class settlement, "courts have an independent obligation to ensure that" any award of fees and costs "is reasonable, even if the parties have already agreed to an amount."  *In re Bluetooth*, 654 F.3d at 941.  In *Briseño*, the Ninth Circuit stressed that, before approving class action settlements, district courts must "scrutiniz[e] the fee arrangement for potential collusion or unfairness to the class" by analyzing three factors: (1) whether counsel "receive[d] a disproportionate distribution of the settlement"; (2) whether the parties agreed to a "clear sailing arrangement"; and (3) whether the settlement includes a "kicker" or "reverter" clause.  *See Briseño v. Henderson*, 998 F.3d 1014, 1023 (9th Cir. 2021).

Here, Defendant has agreed to pay Class Counsel a total of $900,000.00.  As explained more fully below, this fee and cost award is reasonable given that it is inclusive of attorney time expended in the prosecution of this Action, costs of counsel's site investigations of 102 Drop Boxes in seven different states, and of future fees for monitoring and inspecting up to 15% of Defendant's Drop Boxes over the four-year term provided for in the Settlement Agreement.  *See* (Settlement Agreement § 11).

Further, the negotiated fee arrangement does not bear any imprimatur of potential collusion or unfairness to the Class.  First, Class Counsel does not receive any disproportionate distribution of the settlement, as the Settlement Agreement does not

1    involve a common fund but, instead, provides only for injunctive relief.  No part of

2    Counsel's fee award comes from any monetary recovery provided to the Class.  Second,

3    the Settlement Agreement does not include a "clear-sailing arrangement" by which FedEx

4    agrees not to object to an award of attorneys' fees.  *See In re Bluetooth*, 654 F.3d at 947.

5    Third, the Settlement Agreement does not include a "kicker (or reverter) clause" that would

6    send any unawarded fees to Defendant rather than the Class.  *Cf. Briseño*, 998 F.3d at 1027

7    (finding "kicker" clause providing that any reduction of agreed-upon attorneys' fees would

8    revert to defendant rather than the class ran afoul of *Bluetooth*).

        d)    *Settlement Agreement with Lead Plaintiff*

10          The Settlement Agreement provides a $20,000 payment to Plaintiff Kouri in

11   exchange for a general release of his individual claims brought pursuant to California's

12   Unruh Act.  *See* (Settlement Agreement § 9.1).  The Unruh Civil Rights Act entitles

13   claimants to recover a minimum of $4,000 per violation of the ADA.  *See, e.g.*, Cal. Civil

14   Code § 52.  Each incident involving a violation of the ADA may be considered a separate

15   Unruh Act violation.  *See Heatherly v. GD Liquor and Food*, No. 14–cv–03458–RS, 2015

16   WL 4967255, at *5 (N.D. Cal. Aug. 20, 2015) (awarding $8,000 for 2 visits to an

17   inaccessible store).  The Settlement Agreement makes clear that Plaintiff Kouri's receipt

18   of $20,000 is in exchange for his full and complete release of his individual California

19   Unruh Act claim, which provides for statutory minimum damages for every violation (i.e.,

20   each time a mobility-impaired, wheelchair using individual attempted to independently use

21   one of Defendants' unstaffed Drop Boxes in California).  Accordingly, the Court finds that

22   FedEx's $20,000 payment to Plaintiff Kouri in exchange for a general release of his

23   individual claims is fair and reasonable.  *C.T. v. Cal. Dep't of Soc. Servs.*, No. EDCV 18-

24   1655 JGB (KKx), 2021 WL 3192228, at *2 (C.D. Cal. Mar. 1, 2021) (granting final

25   approval where settlement agreement provided for separate award for plaintiff's claims for

26   damages).

27

28

### 4. Equitable Treatment Among Class Members

The terms of the Settlement Agreement provide that Plaintiff and the Settlement Class will receive exactly the same injunctive relief.  Therefore, the Settlement Agreement does not improperly grant preferential treatment to certain segments of the class.  See *Cmty. Res. for Indep. Living v. Mobility Works of Calif., LLC*, 533 F. Supp. 3d 881, 889 (N.D. Cal. 2020) (finding settlement agreement in ADA case providing for injunctive relief and incentive award to named plaintiff treated plaintiffs and all other class members equitably, relative to one another and weighed in favor of approval); *Romero*, 2020 WL 6799401, at *5 (granting final approval where injunctive relief appeared to benefit each class member relatively equally).  Because the terms of the Agreement treat Plaintiffs and all other "class members equitably relative to each other," the Court finds that this factor weighs in favor of approval.  *See* Fed. R. Civ. P. 23(e)(2)(D).

### 5. Sufficiency of Notice

Under Federal Rule of Civil Procedure 23(e), the Court "must direct notice in a reasonable manner to all Settlement Class members who would be bound by the proposal." Fed. R. Civ. P. 23(e)(1).  Although Rule 23 requires that reasonable efforts be made to reach all Settlement Class members, it does not require that each Settlement Class member actually receive notice.  *See Silber v. Mabon*, 18 F.3d 1449, 1454 (9th Cir. 1994) (noting that the standard for class notice is "best practicable" notice, not "actually received" notice).

The notice plan previously approved by this Court was implemented and complies with Rule 23(c)(2)(B).  *See* (ECF Nos. 63, 66, 67-1 ("Sweet Decl.") ¶¶ 3–5).  In accordance with the parties' proposed notice program described in Plaintiff's Motion for Preliminary Approval (ECF No. 50 at 23–25) and Section 10.2 of the Settlement Agreement, a copy of the Full Notice of Class Action Settlement was: (a) disseminated to a list of organizations who provide services to or advocate on behalf of persons with mobility disabilities; (b) distributed via a nationwide social media campaign to inform Settlement Class members about the settlement; and (c) published on a public website dedicated to the Class

settlement, at https://federalexpressdropboxsettlement.com on March 23, 2023, and remains posted as of the date of this order. *See* (Sweet Decl. ¶ 4). No objections have been submitted. The "absence of a negative reaction" weighs in favor of approval. *Chun-Hoon v. McKee Foods Corp*., 716 F. Supp. 2d 848, 852 (N.D. Cal. 2010). Based on the above, the notice provided to the class members appears adequate.

## IV.   ATTORNEYS' FEES AND COSTS

### A.   Attorneys' Fees

In ADA cases, a prevailing plaintiff may recover "a reasonable attorney's fee." 42 U.S.C. § 12205. "A 'reasonable' fee is a fee that is sufficient to induce a capable attorney to undertake the representation of a meritorious civil rights case." *Vogel v. Harbor Plaza Center, LLC*, 893 F.3d 1152, 1158 (9th Cir. 2018) (quoting *Perdue v. Kenny A. ex rel. Winn*, 559 U.S. 542, 552 (2010)) (alteration omitted). The court "must strike a balance between granting sufficient fees to attract qualified counsel to civil rights cases and avoiding a windfall to counsel." *Moreno v. City of Sacramento*, 534 F.3d 1106, 1111 (9th Cir. 2008) (citations omitted). "The way to do so is to compensate counsel at the prevailing rate in the community for similar work; no more, no less." *Id*. Courts calculate a "reasonable attorney's fee" by using the lodestar method, which multiplies an attorney's reasonable hourly rate by the number of hours reasonably expended on the litigation, though this amount can be adjusted upward or downward based on other factors. *Shayler v. 1310 PCH, LLC*, 51 F.4th 1015, 1020 (9th Cir. 2022)

Here, Plaintiff is the prevailing party because, through the Settlement Agreement, Plaintiff "achieve[s] a material alteration of the legal relationship of the parties" that is "judicially sanctioned." *Jankey v. Poop Deck*, 537 F.3d 1122, 1129–30 (9th Cir. 2008). The Ninth Circuit has long held that a plaintiff "prevails" when "he or she enters into a legally enforceable settlement agreement against the defendant." *Barrios v. Cal. Interscholastic Fed'n*, 277 F.3d 1128, 1134 (9th Cir. 2002). Through the Settlement Agreement, Plaintiff has achieved nationwide injunctive relief that obligates FedEx to take significant measures to benefit Plaintiff and other people living with mobility disabilities.

1   As a result of the judicially enforceable Settlement Agreement achieved in this litigation,
2   FedEx will now conduct a comprehensive examination of its more than 34,000 drop boxes
3   for ADA compliance and remediate inaccessible drop boxes throughout the country.  *See*
4   *Kosloff v. Wash. Square Assocs., LLC*, No. C 06-05060 SI, 2007 WL 2023497, at *2 (N.D.
5   Cal. July 12, 2007) (finding plaintiff who entered into legally enforceable settlement
6   agreement against defendant, including injunctive relief, sufficient to establish plaintiff as
7   the prevailing party).  Having found that Plaintiff is the prevailing party, the Court next
8   considers whether Class Counsel's request for fees and costs of $349,821.99[1] is reasonable
9   based on the lodestar, calculated by multiplying the number of hours reasonably expended
10  by a reasonable hourly rate.  *See Vogel*, 893 F.3d at 1158.

11          1.      Hours Reasonably Expended

12          Class Counsel has already expended an aggregate total of more than 446 hours on
13  this matter to date.  *See* (Sweet Decl., Ex. A).  Before filing this lawsuit, Class Counsel
14  conducted an extensive pre-filing investigation and determined that the access barriers
15  encountered by Plaintiff were not isolated examples.  (ECF No. 67 at 17).  Class Counsel's
16  survey of more than 102 drop boxes across seven different states revealed that each drop
17  box presented accessibility barriers, including excessive reach ranges and excessive
18  maximum forces required to operate the drop boxes.  This investigation provided Class
19  Counsel with the information to make an appropriate and informed evaluation necessary
20  to bring the suit.  Since filing the case, Class Counsel vigorously and diligently prosecuted
21  this action on behalf of the Class for more than a year and a half.  Counsel for both parties
22  participated in mediation with Hon. Leo Pappas (Ret.) and thereafter continued
23  negotiations to ultimately reach the Settlement Agreement.  Thus, Plaintiff has

24
25  [1] The $900,000 fee request reflected in the Parties' Settlement Agreement is inclusive of
26  Plaintiff's lodestar and costs already expended in litigating this matter—$349,821.99—as
    well as additional fees and costs—$550,178.01—that Plaintiff seeks in connection with the
27  additional work that will be performed in the future in connection with monitoring FedEx's
28  compliance.

-14-

1    demonstrated that 446 hours is reasonable and reflects only as much time as was necessary

2    to fully protect the interests of the Settlement Class and to successfully litigate and settle

3    this matter.  *See K.M. ex rel. Bright v. Tustin Unified Sch. Dist.*, 78 F. Supp. 1289, 1304

4    (C.D. Cal. 2015) (concluding plaintiff met burden of providing hours expended where

5    counsel's declaration established that billing records submitted were made "at or about the

6    time" when the work was performed and that the time entries "accurately reflect the work"

7    performed).

8                          2.    Reasonable Hourly Rates

9          The next step of the lodestar analysis seeks to determine a reasonable hourly rate for

10   the services provided.  Courts look to the prevailing market rates in the relevant community

11   for similar work by attorneys of comparable skill, experience, and reputation.  *Camacho v.*

12   *Bridgeport Fin., Inc.*, 523 F.3d 973, 979 (9th Cir. 2008).  Further, when considering the

13   appropriateness of counsel's requested hourly rate, a court may consider: "(1) the novelty

14   and complexity of the issues; (2) the special skill and experience of counsel; (3) the quality

15   of representation; and (4) the results obtained."  *Campbell v. Nat'l Passenger R.R. Corp.*,

16   718 F. Supp. 2d 1093, 1098 (N.D. Cal. 2010).  While the prevailing market rate for

17   attorneys of comparable experience, skill, and reputation controls this determination, the

18   fact that "a lawyer charges a particular hourly rate, and gets it, is evidence bearing on what

19   the market rate is, because the lawyer and his clients are part of the market."  *Carson v.*

20   *Billings Police Dep't*, 470 F. 3d 889, 892 (9th Cir. 2006).

21         Plaintiff and the Class were represented by Nye, Stirling, Hale, Miller & Sweet, LLP

22   ("NSHMS"), a firm whose partners have extensive experience litigating class action cases,

23   including dozens of nationwide disability rights class actions throughout the country.  *See*

24   *Betorina v. Randstad US, L.P.*, 2017 WL 1278758, *4 (N.D. Cal. 2017) (noting Class

25   counsel "has extensive experience in class action litigation in California and throughout

26   the country").  Here, NSHMS seeks an hourly rate of $800 for partners, $425 for senior

27   associates, and $325 for junior associates.  *See* (Sweet Decl., Ex. A).  NSHMS's fee

28   requests and hourly rates have routinely been approved as reasonable, including by courts

in the Central District of California.  *See, e.g.*, *Schmitt v. Younique, LLC*, No. 8:17-cv-01397-JVS-JDE, 2020 WL 1812354, at *3 (C.D. Cal. Apr. 9, 2020) (approving of fee award to Class counsel based on 2018 rates ranging from $400 to $795 per hour); *Heinzl v. Cracker Barrel Old Country Store, Inc*., No. 14-cv-1455-RCM, ECF No. 172 (W.D. Pa. Aug. 10, 2017) (finding requested attorneys' fees, future monitoring fees, and allowable costs to be fair and reasonable).  Likewise, courts in this District have found comparable billing rates reasonable in fee motions brought in connection with similar ADA class action settlements.  *See, e.g*., *C.T.*, 2021 WL 3192228, at *1 (approving of fee award pursuant to class settlement of ADA claims where 2021 hourly rates ranged from $690 for senior associates to $1,005 for named partners); *McKibben v. McMahon*, No. EDCV 14-2171 JGB (SPx), 2019 WL 1109683, at *14 (C.D. Cal. Feb. 28, 2019) (finding the following "range of rates" "adequately establishes billing rates for civil rights attorneys in the [Central District]": $887–$1230 per hour for attorneys with 26–49 years of experience; $738–$1220 per hour for attorneys with 23–33 years of experience; $603–$855 per hour for attorneys with 9–15 years of experience; and $336–$671 per hour for attorneys with 1–6 years of experience); *Pike v. Cnty. of San Bernardino*, No. EDCV 17-1680 JGB (KKx), 2020 WL 1049912, at * (C.D. Cal. Jan. 27, 2020) (finding hourly rates between $336 and $1230 per hour are reasonable depending on attorney experience in Fair Labor Standards Act class action settlement); *see also, e.g.*, *Nevarez v. Forty Niners Football Co., LLC*, No. 16-CV-07013-LHK, 474 F. Supp. 3d 1041, 1050 (N.D. Cal. 2020) (finding 2019 hourly rates—ranging from $575 to $925 per hour—reasonable).

Given NSHMS's experience, the technical complexity of the ADA violations at issue, the fact that NSHMS's fee requests have been approved by numerous other courts (and are not challenged by any Class members here), and that this motion is unopposed, the Court finds the requested hourly rates reasonable.  Accordingly, the Court concludes that the lodestar cross-check supports the requested award of $349,821.99 in attorneys' fees.

**B.      Reasonable Monitoring Costs and Expenses**

In addition to requiring FedEx to remediate its non-compliant drop boxes, the Settlement Agreement also contains prospective reporting and monitoring provisions that will allow Class counsel to monitor FedEx's compliance with its terms.  Plaintiff seeks to recover $550,178.01 in fees and costs associated with this future work.

In cases such as this, post-judgment monitoring is a compensable activity for which counsel is entitled to a reasonable fee.  *See Pennsylvania v. Delaware Valley Citizens' Council for Clean Air*, 478 U.S. 546, 558 (1987).  The Ninth Circuit has observed that recovery of reasonable fees for post-judgment monitoring "makes practical sense" given that "injunctions do not always work effectively, without lawyers to see that the enjoined parties do what they were told to do."  *Balla v. Idaho*, 677 F.3d 910, 918 (9th Cir. 2012). *See also Civil Rights Edu. & Enf't Cntr. v. Ashford Hosp. Tr., Inc.*, No. 15–cv–00216–DMR, 2016 WL 1177950, at *5 (N.D. Cal. Mar. 22, 2016) (awarding fees for work performed and fees for future monitoring and evaluating compliance with ADA settlement); *Lane v. Brown*, No. 3:12-cv-00138-ST, 2016 WL 589684, at *3 (D. Or. Feb. 11, 2016) ("Class counsel have an ethical duty to ensure that defendants achieve substantial compliance with any remedial order, and all reasonable time spent on ordinary monitoring traditionally is fully compensable.").

Under the terms of the Settlement Agreement, Class Counsel will also monitor FedEx's compliance with the injunctive relief terms by inspecting up to 15% of its drop box locations, or 5,100 of FedEx's 34,000 drop box locations.  Class Counsel estimated that the cost of these inspections will be approximately $1,500 per drop box.  (Sweet Decl. ¶ 7).  Accordingly, if Class Counsel inspects 367 additional drop boxes during the four-year term, Class Counsel's costs would reasonably exceed the remaining $550,178.01 allocated under the Settlement Agreement.

In addition, "the court may award . . . nontaxable costs that are authorized by law or by the parties' agreement."  Fed. R. Civ. P. 23(h).  Such awards "should be limited to typical out-of-pocket expenses that are charged to a fee-paying client and should be

1  reasonable and necessary." *In re Immune Response Secs. Litig*, 497 F. Supp. 2d 1166, 1177
2  (S.D. Cal. 2007).  Here, Class Counsel have incurred $39,309.49 in costs.  (ECF No. 67 at
3  23).  The total costs and expenses at issue are reasonable given the technical nature of the
4  relief sought in the litigation and the extensive negotiations that led to the settlement
5  agreement in this case.

6  **V.    CONCLUSION**

7        For the foregoing reasons, the Court:

8     1.  **GRANTS** Plaintiff's Unopposed Motion for Final Approval and approve settlement
9         of the action between Plaintiff and Defendant, as set forth in the Settlement
10        Agreement, as fair, just, reasonable, and adequate and directs the Parties to perform
11        their settlement in accordance with the terms set forth in the Settlement Agreement;

12    2.  **GRANTS** an award to Class Counsel for $900,000 in attorneys' fees and costs to be
13        paid to Class Counsel, representing reasonable fees for prior work and future
14        monitoring work on this matter;

15    3.  **GRANTS** an award to Plaintiff Janne Kouri for $20,000 in exchange for a general
16        release of his individual claims and find that this amount is warranted and
17        reasonable;

18    4.  **DISMISSES** Plaintiff's case with prejudice, in accordance with the terms of the
19        Settlement Agreement; and

20    5.  Retains jurisdiction to enforce the Settlement Agreement and resolve any disputes
21        that might arise during its term.

22  **IT IS SO ORDERED.**

23

24  DATED:  July 25, 2023

25

26                                         HON. SHERILYN PEACE GARNETT
                                           UNITED STATES DISTRICT JUDGE
27

28

-18-